UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE

KASEY D. WOODMAN and    )
MARK V. FOLEY           )
    Plaintiffs          )
                        )
v.                      )    CIVIL ACTION NO.
                        )
UNITED STATES OF AMERICA, )
    Defendant           )

## **COMPLAINT**

### JURISDICTION

This is an action arising under the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. This Court is vested with jurisdiction pursuant to 28 U.S.C. § 1346(b).

Pursuant to 28 U.S.C.A. §§ 2675 et seq., any and all administrative remedies have been exhausted prior to the bringing of this action, and the Plaintiffs have fully complied with the law. Specifically, the Plaintiffs complied with 28 U.S.C.A. §§ 2675 et seq. by presenting, by express mail, a Standard Form 95 for each plaintiff, both of which were received by Madigan Army Medical Center on March 23, 2017. The Defendant, United States, was required to make a final disposition of the claim within six months after it was filed. The United States has denied the claim by virtue of its failure to make a timely response within the required six-month period.

### PARTIES

1. The Plaintiff Kasey D. Woodman, hereinafter "Kasey", is a resident of 16 Victory Circle, Rochester, New Hampshire 03867. She is the dependent wife of Mark V. Foley, a non-commissioned officer of the United States Army who was on active duty during the times relevant to this complaint.

2. The Plaintiff Mark V. Foley, hereinafter "Mark", is a resident of 16 Victory Circle, Rochester, New Hampshire 03867.  He is married to Kasey D. Woodman.  During the times relevant to this complaint, he was a non-commissioned officer in the United States Army, assigned to Joint Base Fort Lewis McChord, Washington.

3. The Defendant United States of America operates the U.S. Army Madigan Medical Center, in Tacoma, Washington.

## COUNT I
### (Negligence)

4. The Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 3 above.

5. From August 2012 to July 2015, Kasey D. Woodman resided on Joint Base Lewis McChord, Washington due to her husband's Army assignment to that base.

6. On January 14, 2015, Kasey D. Woodman delivered a baby boy named James at the Madigan Army Medical Center.  During the birth, Kasey suffered a 4th degree laceration of her vagina, damaging her perineum and rectum.

7. Shannon F. Renfrow, M.D., a second-year resident and Jan S. Sunde, M.D., her supervisor, were on duty at Madigan.  They performed surgery soon after the birth to repair the laceration.

8. On February 19, 2015, Kasey informed Dr. Renfrow that she was passing flatus from her vagina.

9. On March 19, 2015, Kasey told Dr. Renfrow that she had started passing stool through her vagina after a bout with explosive diarrhea.  Kasey was also examined by Dr. Scott T. Goodrich who noted that Kasey did not tolerate the exam well.  He noted in the medical

record that if Kasey continued to have discharge over the weekend, then they would plan on performing an EUA the next Tuesday.

10. On March 23, 2015, Dr. Renfrow and Dr. Goodrich noted in the medical record that they were concerned with the possibility of Kasey having a rectovaginal fistula. They were unable to perform a thorough examination due to Kasey's pain, and scheduled an EUA for possible repair of a perineal laceration for March 24, 2015.

11. Upon examination of Kasey under anesthesia on March 24, 2015, Dr. Sunde diagnosed a rectovaginal fistula. This was not an emergency situation requiring the extension of the examination under anesthesia to a surgical procedure. Being a gynecological oncologist, Dr. Sunde did not have the requisite expertise to competently repair a rectovaginal fistula. He failed to refer Kasey to a properly credentialed specialist who in fact was reasonably available and on staff at Madigan. Instead, he negligently permitted Dr. Renfrow, under his supervision, to attempt the rectovaginal fistula repair.

12. On March 31, 2015, Kasey initiated a telephone consult with Renata L. Ireland of the OBGYN Clinic. Ireland noted Kasey's complaint that she was passing leaking fecal matter and gas through her vagina. Ireland forwarded this data to Dr. Sunde, who called Kasey. He noted Kasey's complaint and that she had a fever of 101 degrees three days earlier. He instructed her to come in for an evaluation. Kasey was examined that day by Dr. Renfrow. Dr. Renfrow advised Kasey that they should wait 8 to 12 weeks before attempting another repair and to follow up in 8 weeks or sooner if necessary. Dr. Sunde concurred.

13. On April 17, 2015, Kasey had a follow-up appointment with Dr. Sunde. Kasey reported continuing flatus and bowel content from her vagina. He noted in the medical record that

      Kasey had been examined by Dr. Renfrow in the emergency room on April 12, 2015, for the same symptoms. The patient was to complete ABX. The examination for that day was deferred. Dr. Sunde planned to perform another repair in 8 to 12 weeks.

14. On May 12, 2015, Kasey initiated a telephone consult with Renata Ireland, requesting additional pain medication and an appointment with Dr. Sunde. Kasey inquired about getting a referral to a reconstructive specialist in the Boston area since she was planning on being in that area for some time while her husband was deployed. An appointment was made with Dr. Sunde on May 13, 2015.

15. On May 13, 2015, Kasey met with Dr. Sunde to discuss surgical referral to repair her rectovaginal fistula. He noted in the medical record that Kasey and her husband were from New Hampshire, and Kasey wanted to have surgery in Boston because Mark was scheduled to be on a field exercise that June. Having surgery in Boston would allow her to be with family during her recuperation. Dr. Sunde referred her for a repeat rectovaginal fistula repair near her home. Once again, he did not refer Kasey to the specialists on staff at Madigan.

16. On June 5, 2015, Dr. Sunde ordered a refill of Kasey's medication in anticipation of her trip to Boston. Kasey travelled to Boston and was examined at Massachusetts General Hospital. Dr. Samantha Pulliam, Massachusetts General Hospital, examined Kasey on June 10, 2015. Dr. Pulliam advised Kasey to continue breast-feeding and let her wounds heal. She counseled Kasey that a future repair would work best after she completed breast-feeding. She also advised that physical therapy for the pelvic floor would help Kasey deal with her pelvic pain.

17. Approximately a year later when Kasey informed Dr. Sunde that she was still not healed, Dr. Sunde elected to directly refer her to a staff specialist at Madigan. On April 29, 2016, Dr. Christa M. Lewis and Crystal B. Hammons examined Kasey. They found a fistula and discussed surgical repair with Kasey. Kasey agreed to have surgery.

18. On May 2, 2016, Kasey had a pre-operative appointment with Dr. Lewis. Another follow-up appointment occurred on May 18, 2016. Surgery was scheduled for June 2, 2016.

19. Dr. Lewis performed surgery on June 2, 2016.

20. On June 10, 2016, Kasey reported to Dr. Lewis that she was once again passing stool and flatus through her vagina. Dr. Lewis examined Kasey on June 14, 2016. Dr. Lewis noted in the medical record that the repair had failed. Dr. Lewis recommended a repeat repair with a martius flap. Dr. Vaccaro would perform the procedure on June 28, 2016. Kasey had a pre-op visit with Dr. Lewis on June 17, 2016.

21. Dr. Vaccaro performed the rectovaginal fistula repair with a right martius fat pad transposition on June 28, 2016.

22. Kasey began stool leakage through her vagina six days after the operation, July 4, 2016.

23. Dr. Vaccaro examined Kasey on July 5, 2016. Dr. Vaccaro noted that Kasey was distraught. As Kasey and her husband were returning to New Hampshire as his enlistment was ending soon, Dr. Vaccaro offered to find surgeons in the Dartmouth, New Hampshire/Boston, Massachusetts area. Dr. Vaccaro counseled Kasey that she may need fecal diversion for proper healing and that it was unlikely that Kasey's stool leakage would cease due to spontaneous healing.

24. Upon her return to New Hampshire, Kasey sought care with the Dartmouth-Hitchcock Medical Center in Lebanon, N.H.  She became a patient of Srinivas Ivatury, M.D.  Due to the breakdown of the previous repairs. Kasey was suffering daily and frequent fecal incontinence from the vagina and drainage from the fistula.  She could not exercise of hike due to her symptoms.  Dr. Ivatury performed a High Resolution Anorectal Manometry procedure at Dartmouth-Hitchcock on September 27, 2016.

25. Dr. Ivatury performed a rectovaginal repair on November 8, 2016.  That repair failed.

26. Dr. Ivatury recommended a staged approach for repair due to the multiple recurrences of the rectovaginal fistula.  First, he would perform a diverting procedure to decrease the bacterial burden and pressure on repair.  Second would be the repair.  Third would be the reconnection of the diversion (reanastamosis).

27. On January 20, 2017, Dr. Ivatury performed a fecal diversion on Kasey.

28. On July 21, 2017, Dr. Ivatury and Dr. Nigrny attempted repair by rebuilding vagina and perineum with gracilis muscle transplant.  Dr. Nigrny took the gracilis muscle from Kasey's right leg, from knee to groin, used it as a barrier between the vagina and the rectum.  By September 14, 2017, this repair had failed.

29. Kris Strohbehn, M.D., of Dartmouth-Hitchcock, has informed Kasey that future child-bearing could risk repeat sphincter rupture and recurrent fistula and that she may need a sling for her bladder.  That procedure will not be performed until her child-bearing years have passed.  Kasey will have to live with urinary incontinence until that time.  Any future children must be delivered by Caesarian section.

30. Kasey and Mark have deferred having another child due to her condition.

31. Kasey has had to spend time away from her son James while hospitalized and while she was in a rehabilitation facility. Kasey has also been unable to care for James for periods of time at home as she recuperates from her surgeries. The family has had to hire child care when Kasey has been unable to care for James.

32. The aforementioned repairs should have been obviated had Dr. Sunde performed competently on March 24, 2015, that is, in accord with the requisite standard of care. Once he completed his "exam under anesthesia", Dr. Sunde should have provided Kasey, either intra-operatively or as an outpatient, the proper referral to a sub-specialist in Female Pelvic reconstructive surgery, namely, a FPMRS or colorectal surgeon, one far more experienced in non-cancerous issues such as rectovaginal fistulae, and who in fact was readily available to Kasey at Madigan. Had he performed competently by requesting an immediate consult rather than proceeding with a surgical procedure for which he did not have the requisite expertise, Dr. Sunde would not only have afforded Kasey a much greater chance of early cure and a full recovery but also would have obviated her subsequent redo surgeries. Dr. Sunde's negligent deviation from the standard of care also caused Kasey a far lesser chance of success together with a sharp increase in complications flowing from her subsequent surgeries.

33. As a direct, proximate and reasonably foreseeable result of Dr. Sunde's professional negligence, Kasey was injured, with resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money. The losses are either permanent or continuing in their nature, and Kasey will suffer such losses and impairments in the future.

34. At all times material to this complaint, the United States was legally and vicariously responsible for the negligence of Dr. Sunde and all other health care providers employed by the United States who rendered treatment to the Plaintiff.

**WHEREFORE**, Kasey demands judgment be entered against the defendant United States of America in the sum of fifteen million dollars ($15,000,000.00).

COUNT II
(Loss of Consortium)

35. The Plaintiff Mark V. Foley re-alleges and incorporates by reference the allegations in Paragraphs 1 through 34 above.

36. As a direct and proximate result of the negligence of Dr. Sunde as set forth above, Kasey has become permanently injured and disabled. As a consequence of his wife's injuries, Mark has lost and been deprived of the love, companionship, comfort, care, and support of his spouse, all to his great damage. This deprivation and impairment will necessarily continue for a long time into the future.

**WHEREFORE**, Mark demands judgment be entered against the defendant United States of America in the sum of seven million five hundred thousand dollars ($7,500,000.00).

February 20, 2018

The Plaintiffs,
By their attorneys,

/s/ Rosario Mario F. Rizzo

Rosario Mario F. Rizzo, Esq.,
NH Bar # 9080
801 Main Street
Concord, MA 01742-3313
Tel: (978) 371-2500
Fax: (978) 371-1352
Email: rosario.rizzo@rizzolawfirm.com